NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALISSA MOON, individually and on behalf of all others similarly situated, | Civil Action No. 15-06297(SDW)(LDW) |
| Plaintiff, | |
| v. | OPINION |
| BREATHLESS, INC. a/k/a VISION FOOD & SPIRITS d/b/a BREATHLESS MEN'S CLUB, | |
| Defendant. | July 29, 2016 |

**WIGENTON**, District Judge.

Plaintiff Alissa Moon ("Plaintiff") commenced this putative collective and class action against Defendant Breathless, Inc. ("Defendant"), owner and operator of Breathless Men's Club, an adult nightclub in Rahway, New Jersey, on August 19, 2015. Plaintiff seeks relief from Defendant, individually and on behalf of all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. ("N.J.S.A.") § 34:11-4.1, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, *et seq.*[1]

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 216(b), and 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

1

Currently before this Court is Defendant's Motion for Summary Judgment. (Dkt. No. 26.) This Court, having considered the parties' submissions and having held oral argument, holds that, for the reasons stated below, Defendant's Motion is **GRANTED**.

## I.     BACKGROUND

Plaintiff Alissa Moon performed as an exotic dancer at Defendant Breathless, Inc.'s "Breathless Men's Club" in Rahway, New Jersey, from May of 2013 to approximately September of 2015. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶¶ 1-2, 5; Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 3.) On August 19, 2015, Plaintiff filed her Complaint in this matter, which alleges that Defendant treated its exotic dancers as independent contractors, rather than as employees, and that Defendant therefore violated the FLSA, the NJWPL, and the NJWHL by failing to pay minimum and overtime wages; unemployment, disability, and social security taxes; as well as "workers' compensation premiums and other mandatory insurance benefits." (Compl. ¶ 3.) On November 30, 2015, this Court denied Defendant's Motion to Dismiss, (Dkt. No. 12.), as to Plaintiff and ordered the parties to engage in limited discovery on the issue of whether Plaintiff's claims are subject to a valid arbitration agreement. (Dkt. No. 17.) Defendant filed a Motion for Summary Judgment ("Motion") on April 8, 2016, and again argues that Plaintiff's claims are subject to a valid arbitration agreement. (Dkt. No. 26.)[2]

On January 5, 2015, Plaintiff entered a written agreement with Defendant: the "Independent Dancer Rental Agreement." (Def.'s SUMF ¶ 1; Dkt. No. 12-1 (the "Agreement").) Although the particular circumstances under which Plaintiff signed the Agreement are in dispute (Plaintiff claims she was told to sign the Agreement in front of fourteen to twenty other women

---

[2] This Court also held oral argument on Defendant's Motion on July 19, 2016. (Dkt. No. 36.)

after she had paid her fee to perform for the night; while Defendant claims Plaintiff was given ample opportunity to review the Agreement alone in a manager's office), the fact that Plaintiff signed the Agreement is not.  (Def.'s SUMF ¶ 1; Pl.'s SUMF ¶ 7; Moon. Dep. 80:5-81:8.)

The terms of the Agreement state that Plaintiff is an independent contractor and that she is not Defendant's employee. (Agreement ¶ 1.)  In addition, paragraph 9 of the Agreement states:

> <u>Arbitration and Waiver</u>:    In a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration.  THIS MEANS THAT NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL – DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION. <u>ARBITRATION MUST BE ON AN INDIVIDUAL BASIS</u>. THIS MEANS NEITHER YOU NOR WE MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION, OR LITITGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

In addition, paragraph 10 of the Agreement states:

> <u>Attorney's Fees</u>:    Should it become necessary for the Club to enforce the terms of this Agreement through legal proceedings, the Club shall be entitled to reasonable attorney's fees and costs from the other party, which shall include fees and costs incurred at both the trial and appellate level.

According to Defendant, paragraph 9 of the Agreement (the "arbitration provision") constitutes a valid arbitration agreement to which Plaintiff's claims currently before this Court are subject. (*See generally* Def.'s Br. Supp. Mot. Summ. J. ("Def.'s Br. Supp.").)  Defendant therefore claims to be entitled to summary judgment.  (*Id*.)

In opposition, Defendant argues that both the Agreement as a whole and the arbitration provision itself are invalid.  (*See generally* Pl.'s Br. Opp. Mot. Summ. J. ("Pl.'s Br. Opp.") 3-7, 9-22.)  Defendant also contends that her claims are outside the arbitration provision's scope.  (*See* Pl.'s Br. Opp. 7-9.)

3

In light of the parties' submissions, the issues before this Court are whether the parties entered a valid arbitration agreement and, if so, whether Plaintiff's claims are within the scope of that agreement.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving

4

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the non-moving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.

Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The non-moving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. Appx. 548, 554 (3d Cir. 2002).

In the context of a party seeking to compel arbitration after conducting limited discovery on the question of arbitrability, the court must determine whether "'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Such disputes "generally fall into two categories—(1) when the parties dispute 'whether [they] have a valid arbitration agreement at all' (whose claims

5

the arbitrator may adjudicate); and (2) 'when the parties are in dispute as to whether a concededly binding arbitration clause applies to a certain type of controversy' (what types of controversies the arbitrator may decide)." *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 332 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 1530 (2015) (quoting *Puleo v. Chase Bank USA, N.A.,* 605 F.3d 172, 178 (3d Cir. 2010) (en banc) (internal quotation marks and citation omitted)). In analyzing these issues, the court must bear in mind that since "'[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti*, 716 F.3d at 771 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir. 1980)); *Par–Knit Mills, Inc.* 636 F.2d at 54 ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect."). Moreover, although the Federal Arbitration Act, 9 U.S.C. §§ 1-16, embodies a "national policy favoring arbitration agreements," *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), "[t]o determine whether the parties agreed to arbitrate, we turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). Accordingly, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 361-62 (2011) (quoting 9 U.S.C. § 2) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff contends that summary judgment is inappropriate in this matter because the purported arbitration agreement is invalid and because Plaintiff's claims are outside its scope. (*See*

6

*generally* Pl.'s Br. Opp.)  However, as discussed below, Plaintiff fails to establish a genuine issue as to the validity or scope of the arbitration provision.

    **A.  Existence of a Valid Arbitration Agreement**

Plaintiff's Opposition raises, in essence, four arguments as to the validity of the Agreement and/or the arbitration provision.  This Court considers each argument in turn.

Plaintiff first contends that the Agreement is void because it misclassifies Plaintiff as an independent contractor in violation of N.J.S.A. § 34:11-56a3. (Pl.'s Br. Opp. 3-7.)  However, challenges to the legality of an agreement that contains an arbitration provision, as opposed to challenges to the arbitration provision itself, are decided by the arbitrator.  *See Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46 (holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").  Accordingly, the question of whether the Agreement violates N.J.S.A. § 34:11-56a3 is not one for this Court to decide.

Plaintiff's second argument regarding validity is that the Agreement and arbitration provision were not supported by sufficient consideration. (*See* Pl.'s Br. Opp. 17-21.)  Specifically, Plaintiff contends that the Agreement lacked consideration because she only performed at Breathless Men's Club for eight months, on a part-time basis, after signing the Agreement. (*Id.*)  However, under New Jersey law, "[a] very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 879 (N.J. 2002) (quoting *Traphagen's Ex'r v. Voorhees,* 44 *N.J. Eq.* 21, 31, 12 *A.* 895 (Ch. 1888) (internal quotation marks omitted)).  In light of this low standard, Plaintiff's continued ability to perform at Breathless Men's Club was sufficient consideration to support the Agreement.  Moreover, even if Plaintiff's continued ability to perform at Breathless

Men's Club were not sufficient consideration, "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002) (citing *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 637 (7th Cir.1999); then citing *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 378 (4th Cir.1998)).  In this instance the arbitration provision uniformly waives both parties' litigation rights and provides that "[i]n a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration."  (Agreement ¶ 9.)  Accordingly, there is no genuine dispute as to whether the arbitration provision is supported by adequate consideration.

Plaintiff's third argument regarding the validity of the arbitration provision is that the Agreement as a whole is unconscionable.  (Pl.'s Br. Opp. 9-17.)  Specifically, Plaintiff contends that the Agreement is a contract of adhesion, that it is procedurally unconscionable due to the circumstances under which it was made, and that it is substantively unconscionable because its terms are "egregiously one-sided."  (*Id.*)

To determine whether an arbitration agreement is unconscionable, New Jersey courts apply a "sliding-scale approach . . . considering the relative levels of *both* procedural and substantive unconscionability." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006) (citing *Sitogum Holdings, Inc. v. Ropes,* 800 A.2d 915 (N.J. Ch. Div. 2002); then citing *Muhammad v. Cty. Bank of Rehoboth Beach, Delaware*, 912 A.2d 88, 97 n.3 (N.J. 2006)) (emphasis added).  This analysis is sharpened when the contract at issue is one of "adhesion" (a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars.")  *See Muhammad*, 912 A.2d at 96 (quoting *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 685 (N.J. 1992)).  Under such

circumstances, the court also considers "[ (1) ] the subject matter of the contract, [ (2) ] the parties' relative bargaining positions, [ (3) ] the degree of economic compulsion motivating the "adhering" party, and [ (4) ] the public interests affected by the contract. *Delta Funding Corp.*, 912 A.2d at 111 (2006) (quoting *Rudbart*, 605 A.2d at 687 (1992)) (internal quotation marks omitted).

In this instance, there are indicia of *procedural* unconscionability. Although there is a dispute as to the circumstances under which Plaintiff signed the Agreement, Plaintiff contends that one of Defendant's managers told Plaintiff to sign the agreement in front of fourteen to twenty other women after she had paid her fee to perform for the night. (Pl.'s SUMF ¶ 7; Moon. Dep. 80:5-81:8). Moreover, Plaintiff points out that she has only attended two semesters of college and that her "work experience, excluding Breathless, is substantially limited to part-time retail, secretarial and cosmetology positions." (Pl.'s SUMF ¶¶ 3-4.) However, with regard to *substantive* unconscionability, Plaintiff fails to show how the terms of the arbitration provision (rather than the Agreement as a whole) are so "one-sided as to shock the court's conscience." *Delta Funding Corp.*, 912 A.2d at 120 (2006) (quoting *Sitogum Holdings, Inc.*, 800 A.2d at 921).

According to Plaintiff, "[t]he overall one-sided nature of the *independent dancer rental agreement* is sufficient to render it substantively unconscionable." (Pl.'s Br. Opp. 16 (emphasis added).) In support of this argument, Plaintiff cites to twenty-five purported one-sided provisions *throughout* the Agreement. (*Id.* at 13-14.) However, to the extent Plaintiff contends that the Agreement as a whole is unconscionable, that is a question for the arbitrator, and not this Court, to consider. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46. Moreover, of the twenty-five provisions of the Agreement that Plaintiff claims to be one-sided, only five pertain to the arbitration provision. (Pl.'s Br. Opp. 14.) Specifically, Plaintiff points out that, under the terms of the arbitration provision, she agreed to arbitrate certain disputes and waived her rights to a jury trial,

to litigate in a judicial forum, and to proceed on a class or collective action basis. (*Id* (citing Agreement ¶ 9).) However, a plain reading of the arbitration provision shows that the parties mutually waived their litigation rights; Plaintiff did not waive any of these rights unilaterally. (*See* Agreement ¶ 9.)[3]  As a result, even if this Court were to consider the Agreement a contract of adhesion, there is no genuine dispute as to whether the arbitration provision is unconscionable. *See Martindale*, 800 A.2d at 881 (holding that even if the arbitration agreement at issue were characterized as a contract of adhesion, it could not be invalidated because the plaintiff "failed to demonstrate how the terms of the arbitration agreement were oppressive or unconscionable . . . . [and] agreements to arbitrate are not violative of public policy").

Plaintiff's fourth argument as to the validity of the Agreement and arbitration provision is that arbitration would be cost-prohibitive because "[t]he Rental Agreement requires Ms. Moon to pay her own attorney's fees and costs in addition to those incurred by Breathless." (Pl.'s Br. Opp. 21-22 (citing Agreement ¶ 10).) However, the Agreement does not require Plaintiff to pay her own costs and fees and is ambiguous as to whether it would require Plaintiff to pay Defendant's costs and fees at arbitration. (*See* Agreement ¶ 10.) Nonetheless, Plaintiff also appears to argue that, regardless of any cost or fee shifting provisions in the Agreement, the arbitration provision is invalid because the costs of arbitration are high and because "[Plaintiff] is a makeup stylist at small [sic] salon." (Pl.'s Br. Opp. 22.) Yet, despite the fact that the burden is on Plaintiff to show that arbitration would be cost-prohibitive, *see Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 283 (3d Cir. 2004), she has not provided any information to this Court as to either her ability to

---

[3] Although Plaintiff contends that paragraph 10 of the Agreement would require her to pay Defendant's costs and fees in arbitration, paragraph 10 is, at best, ambiguous as to whether it applies to arbitration. Its interpretation must, therefore, be left to the arbitrator. *See Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 231 (3d Cir. 2012) ("The Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator." (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003)).

pay any arbitration-related costs, or as to the amount of damages she is seeking. Nor was that information provided at oral argument, although Plaintiff's counsel did speculate that Plaintiff's income is $10 to $15 per hour, if not more. (July 19, 2016 Hr'g Tr. 16:16-19.) As a result, Plaintiff has failed to show that there is a genuine issue as to whether arbitration would be cost-prohibitive.[4]

### B. Scope of the Arbitration Provision

In addition to challenging the arbitration provision's validity, Plaintiff argues that summary judgment is inappropriate because none of her claims are within its scope. (Pl.'s Br. Opp. 7-9.) According to Plaintiff, her claims are not within the arbitration provision's scope because the provision does not explicitly state that it applies to statutory claims. (*See id.* at 9.) However, under New Jersey law, "[a]lthough an arbitration clause does not have to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is being waived, the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Atalese v. U.S. Legal Services Group, L.P.,* 219 N.J. 430, 435 (N.J. 2014). Therefore, in determining whether Plaintiff's claims falls within the scope of the arbitration provision, this Court must consider whether the provision itself is sufficiently broad to explain that Plaintiff is giving up her right to bring her employment misclassification claims in court. *Id.*; *see also Mut. Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J.), *aff'd*, 970 F.2d 899 (3d Cir. 1992) (explaining that to determine whether claims fall within the scope of an arbitration agreement a court must "focus . . . on the

---

[4] Plaintiff also submitted supplemental briefing to this Court arguing that the arbitration provision's class-action waiver is invalid because it violates Plaintiff's right to self-organization as an employee under the National Labor Relations Act. (*See* Dkt. No. 33 (citing *Lewis v. Epic Sys. Corp.*, 2016 U.S. App. LEXIS 9638, *3 (7th Cir. May 26, 2016)). However, this Court cannot reach the question of whether class-action waivers in employee arbitration agreements violate the National Labor Relations Act because the underlying question of whether Plaintiff is an employee is not currently before this Court. Should the arbitrator determine that Plaintiff was in fact Defendant's employee, Plaintiff may then raise this argument with this Court.

'factual allegations in the complaint rather than the legal causes of action asserted'" (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987))).

In this instance, the arbitration provision applies to all claims "under this agreement." (Agreement ¶ 9.) Plaintiff's claims, as explained in the Complaint, are all based on Defendant allegedly misclassifying "its exotic dancers as independent contractors even though they are actually employees under federal and state law." (Compl. ¶¶ 1-5.) In addition, and of particular importance, the Agreement itself states that Plaintiff is an independent contractor and not Defendant's employee. (Agreement ¶ 1.) Therefore, Plaintiff's claims that she was misclassified as an independent contractor are directly in conflict with the provisions of the Agreement. As a result, Plaintiff's claims fall squarely within the scope of the arbitration provision. *See, e.g.*, *Herzfeld v. 1416 Chancellor, Inc.*, No. CIV.A. 14-4966, 2015 WL 4480829, at *5 (E.D. Pa. July 22, 2015) (holding that an exotic dancer's employment misclassification claims "ar[ose] out of [an arbitration] agreement" which stated that "[t]he parties hereto acknowledge that the status created between owner and performer is that of a lease for use of the premises"). Moreover, the arbitration provision explains and sets out in capital letters that, under the terms of the provision, Plaintiff waived her litigation rights. (Agreement ¶ 9.) As a result, there is no genuine dispute as to whether Plaintiff's claims fall within the scope of the arbitration provision.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*<br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:   Magistrate Judge Leda D. Wettre
    Parties